JUSTIN W. STAPLETON,

        Plaintiff,

      v.                                     Case No. 21-C-124

FRANCISCO SANTOS, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Justin Stapleton is representing himself and proceeding on an Eighth Amendment deliberate indifference claim against Defendants Francisco Santos and Gerald Bester based on allegations that they delayed alerting medical staff that Stapleton had fallen and hit his head. On February 7, 2022, Defendants filed a motion for summary judgment. The Court will grant their motion and dismiss this case.

## BACKGROUND

At the relevant time, Stapleton was a convicted prisoner confined at the Kenosha County Pretrial Facility where Santos and Bester worked as jail correctional officers. On June 14, 2020, at about 8:40 p.m., Stapleton intentionally flooded his cell because he was angry that he had been denied access to the law library. Bester turned off the water to Stapleton's cell about five minutes later to stop further flooding. Over the next hour and twenty minutes, inmates who had been affected by the flooding were removed from their cells and their cells were cleaned. Stapleton was left in his flooded cell. Defendants assert that he was given towels to clean and dry his cell, but Stapleton denies that he was given towels. Dkt. No. 83 at ¶¶1-4, 7-16.

According to Stapleton, he pressed his emergency button to inform officers that his cell was still flooded and needed to be cleaned. He states that no one responded. Stapleton asserts that he slipped and fell about five to ten minutes later and that "when [he] woke up" he was unable to move so he yelled for help. Stapleton states that another inmate pressed his emergency call button and that Defendants came to his cell front about five minutes later. Stapleton asserts that Santos chuckled, told him he was fine, and instructed him to get up. He asserts that Defendants then left. He states that about fifteen to thirty minutes later, Santos came to his cell a second time and told him the nurse was on her way. The nurse arrived about five minutes later. Stapleton was placed in handcuffs and evaluated. The nurse provided Stapleton with Tylenol and ice as needed and told him he could request further care by filling out a medical care slip, which Stapleton did the next day. The parties do not state whether Stapleton received any further treatment. Dkt. No. 82 at ¶¶6-11; Dkt. No. 83 at ¶32-34, 49.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary

2

judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Stapleton asserts that Defendants were deliberately indifferent to his head injury because they delayed contacting a nurse after they learned he had fallen. *See* Dkt. No. 82 at ¶11. Stapleton was a convicted prisoner at the time of the incident, so the Eighth Amendment applies. Dkt. No. 83 at ¶6. Prison officials violate the Eighth Amendment when they act with deliberate indifference to a substantial risk of serious harm to an inmate's health. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). An "'inexplicable delay' in responding to an inmate's serious medical condition can reflect deliberate indifference. That is especially so if that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations omitted). "The length of delay that violates the Eighth Amendment depends on the severity of the condition and the ease of providing treatment . . . ." *Hill v. Meyer*, No. 21-2884, 2022 WL 1078871, *3 (7th Cir. April 11, 2022) (citations omitted).

The parties dispute whether Stapleton hitting his head constitutes a serious medical condition, but even assuming it does, no jury could reasonably conclude that Defendants were deliberately indifferent to his condition. As the Seventh Circuit has explained, "[e]very claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). According to Stapleton, Defendants responded to his cell about five minutes after they learned from another inmate that Stapleton had fallen. At that point, Defendants observed Stapleton laying on the ground, yelling

3

that he needed help. Stapleton was conscious and agitated, and he was not bleeding or otherwise obviously injured. Defendants assert that they did not believe he was in need of emergency care, nor did they believe he was in danger of further injuring himself. Dkt. No. 83 at ¶¶29. Stapleton asserts that Santos told him to get up. But Stapleton continued to lay on the ground and yell that he needed help. Stapleton asserts that about fifteen to thirty minutes later, Santos came back to his cell and informed him that the nurse was on her way. Dkt. No. 82 at ¶9.

Defendants assert that they immediately contacted the nurse once they observed Stapleton laying on the ground. Dkt. No. 83 at ¶¶22-24. Stapleton disputes this, but he has no personal knowledge of when Defendants contacted the nurse. He knows only when he was informed that the nurse was on her way. Defendants are not liable for the nurse's delay in responding to their notice that Stapleton was in need of her assistance. Further, even if Defendants waited fifteen to thirty minutes to contact the nurse as Stapleton speculates, no jury could find that such a minimal delay demonstrated deliberate indifference. Stapleton had consistently engaged in disruptive behavior that night, first by flooding his cell and then by telling officers they deserved it for not giving him what he wanted. This behavior was not out of character for Stapleton as he was already on a two-officer protocol based on prior incidents and threats to officers and staff. Dkt. No. 83 at ¶20. Given that Stapleton had no obvious injuries and was conscious and yelling at officers, it would not have been unreasonable for Defendants to initially conclude that he was not in need of emergency care but was simply continuing to act out because he was frustrated that he had not been moved to a new cell as he demanded.

In any event, Stapleton's claim fails because he presents no evidence that he was harmed by the short delay. *See Petties*, 836 F.3d at 731 ("To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that

4

the delay exacerbated the injury or unnecessarily prolonged pain."). The nurse who evaluated Stapleton prescribed Tylenol and ice. Stapleton asserts that he remained in pain that night and that he submitted a health slip the next day because he continued to feel dizzy and his whole body continued to hurt. Given that the Tylenol and ice provided by the nurse did not relieve Stapleton's symptoms, he suffered no harm from receiving them fifteen to thirty minutes later than he otherwise could have. Defendants are entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 61) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 8th day of July, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.